UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GARY L. BARNES,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Court No. 25-0043 |

DEFENDANT'S MOTION TO DISMISS

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge

ERIC E. LAUFGRABEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-7995
Email:      Eric.E.Laufgraben@usdoj.gov

March 21, 2025                              Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...........................................................................................................1

QUESTIONS PRESENTED ...........................................................................................2

STATEMENT OF FACTS ..............................................................................................3

        A.      Statutory Background ............................................................................3

        B.      The President Announces Additional Tariffs On Products From Mexico, Canada, And The People's Republic Of China ...........3

        C.      Plaintiff's Complaint .............................................................................5

ARGUMENT ...................................................................................................................6

    I.      Standard Of Review ..........................................................................................6

    II.     Plaintiff Lacks Article III Standing To Bring This Suit ...................................6

        A.      Plaintiff Has Not Alleged An Injury In Fact ..........................................7

        B.      Plaintiff's Alleged Injury Is Not Fairly Traceable To The Additional Tariffs ..................................................................................10

        C.      The Alleged Injuries Are Not Redressable By A Favorable Court Decision .......................................................................................11

    III.    Prudential Standing Principles Support Dismissal .........................................12

CONCLUSION ..............................................................................................................13

## TABLE OF AUTHORITIES

Cases

*Bennett v. Spear*,
    520 U.S. 154 (1997) .................................................................................................. 12

*Burnett v. Convergent Outsourcing, Inc.*,
    982 F.3d 1067 (7th Cir. 2020) ..................................................................................... 9

*Clapper v. Amnesty Int'l, USA*,
    568 U.S. 398 (2013) .................................................................................................. 10

*Crow Creek Sioux Tribe v. United States*,
    900 F.3d 1350 (Fed. Cir. 2018) ................................................................................... 6

*Design Int'l Grp., Inc. v. United States*,
    113 F. Supp. 3d 1342 (Ct. Int'l Trade 2015) .............................................................. 6

*Emerald Int'l Corp. v. United States*,
    54 Fed. Cl. 674 (2002) .............................................................................................. 10

*Finkelman v. NFL*,
    810 F.3d 187 (3d Cir. 2016) ........................................................................................ 8

*Fla. Audubon Soc'y v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) .................................................................................... 10

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
    938 F.3d 1355 (Fed. Cir. 2019) ................................................................................... 6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................. 9, 11

*Murthy v. Missouri*,
    603 U.S. 43 (2024) .................................................................................................... 11

*N. Am. Interpipe, Inc. v. United States*,
    519 F. Supp. 3d 1313 (2021) ..................................................................................... 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................... 7, 8, 9

*Totes-Isotoner Corp. v. United States*,
    594 F.3d 1346 (Fed. Cir. 2010) ............................................................................ 8, 12

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*,
   454 U.S. 464 (1982) .................................................................................................. 7, 8

## Constitutional Provisions

U.S. Const. art. III ............................................................................................................ 5

## Statutes

19 U.S.C. § 1321 .............................................................................................................. 5

50 U.S.C. § 1701 .............................................................................................................. 3

50 U.S.C. § 1702 .............................................................................................................. 3

## Executive Orders and Proclamations

*Proclamation 10886 of Jan. 20, 2025, Declaring a National Emergency at the Southern
   Border of the United States*, 90 Fed. Reg. 8327 (Jan. 29, 2025) ................................. 3

*Exec. Order 14193 of Feb. 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs
   Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025) ................................. 3

*Exec. Order 14194 of Feb. 1, 2025, Imposing Duties to Address the Situation at Our
   Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025) ................................................... 3

*Exec. Order 14195 of Feb. 1, 2025, Imposing Duties to Address the Synthetic Opioid
   Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025) ........... 3, 4

*Exec. Order 14197 of Feb. 3, 2025, Progress on the Situation at Our Northern Border*,
   90 Fed. Reg. 9183 (Feb. 10, 2025) ............................................................................... 4

*Exec. Order 14198 of Feb. 3, 2025, Progress on the Situation at Our Southern Border*,
   90 Fed. Reg. 9185 (Feb. 10, 2025) ............................................................................... 4

*Am. Notice of Implementation of Add'l Duties on Prods. of the PRC Pursuant to the
   President's Feb. 1, 2025 Exec. Order*, 90 Fed. Reg. 9431 (Feb. 12, 2025) ............... 4, 5

*Exec. Order 14231 of Mar. 6, 2025, Amendment to Duties to Address the Flow of
   Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 11, 2025) ................ 4

*Exec. Order 14232 of Mar. 6, 2025, Amendment to Duties to Address the Flow of
   Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (Mar. 11, 2025) ................ 4

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GARY L. BARNES,<br><br>　　Plaintiff,<br><br>　　v.<br><br>THE UNITED STATES,<br><br>　　Defendant. | Court No. 25-0043 |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of this Court, defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Gary L. Barnes, because plaintiff lacks both Article III standing and prudential standing.

INTRODUCTION

This case challenges the constitutionality of new tariffs on Mexican, Canadian, and Chinese imports that were announced by the President in February 2025. Although the suit lacks merit, the Court should dismiss the case under Rule 12(b)(1) because plaintiff lacks both Article III standing and prudential standing to bring it.

Plaintiff is not an importer who directly paid these additional tariffs on Mexican, Canadian, or Chinese imports. Rather, plaintiff is an American consumer who is concerned that additional tariffs will adversely affect the American economy and weaken consumer buying power. Plaintiff brings this suit to "preserve, protect, defend, uphold and enforce the provisions of the United States Constitution" and remedy general harms to all United States citizens. Compl. ¶ 77. But a suit to generally enforce the Constitution on behalf of all United States

citizens is at odds with well-settled Article III standing principles, which require a plaintiff to show three essential requirements: (1) that he has suffered an injury in fact, (2) that his injury is fairly traceable to the challenged conduct, and (3) that his injury is redressable by this Court.

The complaint does not sufficiently allege any of these standing requirements.  Plaintiff does not allege a particularized and concrete injury to himself, but instead speculates that unidentified American consumers more generally will be injured or that his right to congressional representation will be impaired.  Moreover, plaintiff cannot show that any alleged injury to him is traceable to the challenged tariffs or redressable by this Court, given that both elements rely on private parties and market forces that are beyond this Court's control.

Finally, even if plaintiff could establish Article III standing, principles of prudential standing militate in favor of dismissing this case because those responsible for paying the additional tariffs (*e.g.*, importers of record) are best suited to litigate their validity.

Accordingly, the complaint should be dismissed.

## QUESTIONS PRESENTED

1.      Whether plaintiff has Article III standing to bring this suit when he has not sufficiently alleged an injury in fact arising from the President's imposition of additional tariffs that is traceable to those tariffs and redressable by this Court.

2.      Even if plaintiff has Article III standing, whether the Court should dismiss the suit for lack of prudential standing given that others are better suited to litigate the validity of the challenged tariffs.

STATEMENT OF FACTS

A.  Statutory Background

Congress enacted the International Emergency Economic Powers Act (IEEPA) in 1977 to provide the President with authority to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a).  Upon declaring a national emergency, IEEPA authorizes the President to "regulate" a variety of international economic transactions, including the "importation" of "any property in which any foreign country or a national thereof has any interest[.]" *Id.* § 1702(a)(1)(B).

B.  The President Announces Additional Tariffs On Products From Mexico, Canada, And The People's Republic Of China

On January 20, 2025, the President declared a national emergency, in part, due to the "illicit narcotics that have flowed across the southern border" and "illegal entry of aliens" into the United States. *See Proclamation 10886 of Jan. 20, 2025*, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 29, 2025).  On February 1, 2025, the President expanded the scope of the national emergency declaration to include the alleged failure of Mexico, Canada, and China to sufficiently address the flow of illicit drugs and/or illegal aliens into the United States.  *See Exec. Order 14193 of Feb. 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025); *Exec. Order 14194 of Feb. 1, 2025, Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025); *Exec. Order 14195 of Feb. 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

In light of this declaration, the President invoked his authority under IEEPA to announce the following tariffs: 25 percent tariffs on products from Mexico; 10 percent tariffs on energy or energy resources from Canada and 25 percent tariffs on other products from Canada; and 10 percent tariffs on products from China.  *Id.*

Two days later, on February 3, 2025, the President issued Executive Orders that recognized that Mexico and Canada had taken immediate steps to alleviate the flow of illicit drugs and/or illegal aliens into the United States, but found that additional time was needed to assess their sufficiency.  *See, e.g.*, *Exec. Order 14197 of Feb. 3, 2025*, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9183 (Feb. 10, 2025); *Exec. Order 14198 of Feb. 3, 2025, Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9185 (Feb. 10, 2025).  Accordingly, the President paused most of the tariffs on Mexican and Canadian goods until March 4, 2025.  *Id.*  After the pause expired, the President issued Executive Order that further modified the tariffs on March 6, 2025.  *See Exec. Order 14231 of Mar. 6, 2025, Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 11, 2025); *Exec. Order 14232 of Mar. 6, 2025, Amendment to Duties to Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (Mar. 11, 2025).[1]

Meanwhile, the President directed the Secretary of Homeland Security to implement the 10 percent tariffs on Chinese goods.  *See Am. Notice of Implementation of Add'l Duties on Prods. of the PRC Pursuant to the President's Feb. 1, 2025 Exec. Order*, 90 Fed. Reg. 9431 (Feb. 12, 2025).  In turn, the Secretary of Homeland Security amended the Harmonized Tariff Schedule of the United States by adding a new heading, 9903.01.20, which requires an extra 10

---

[1] The additional tariffs on Mexican, Canadian, and Chinese goods have undergone several changes since they were announced, but for the purposes of this motion, we have outlined their general timeline and terms.

percent duty on Chinese goods, on top of any duties already provided for those goods in the applicable subheadings, effective February 4, 2025, with certain limited exceptions. *Id.* Chinese goods that are entitled to duty-free *de minimis* treatment under 19 U.S.C. § 1321 are not subject to the tariffs. *Id.* The additional tariffs on Chinese goods remain in effect. *Id.* at 9431-32.

      C.      <u>Plaintiff's Complaint</u>

Plaintiff filed his complaint on February 3, 2025, before the additional tariffs took effect. Plaintiff does not allege that he has paid or will pay any such tariffs. Rather, as alleged, plaintiff is an American citizen who brings this case to "preserve, protect, defend and uphold the provisions of the United States Constitution." Compl. ¶ 72.

Plaintiff alleges that the additional tariffs will have a negative effect on the national economy and the buying power of American citizens. Plaintiff generally anticipates higher prices because "[m]anufacturers and businesses will pass the cost of doing business, caused by the [tariffs], [onto] the consumers" by raising prices, *id.* ¶¶ 25-26, and higher prices "will have a negative impact on [plaintiff's] and all citizen[s'], quality of life," *id.* ¶ 74. Thus, plaintiff describes the additional tariffs as hidden or indirect taxes on American citizens that will decrease their buying power. *See id.* ¶ 63.

Plaintiff challenges the constitutionality of the tariffs for multiple reasons, including because the United States Constitution grants Congress the "power to lay and collect Taxes, Duties, Imposts and Excises"—not the President—such that the President violated the separation-of-powers doctrine by enacting tariffs absent congressional approval. *See, e.g.*, *id.* ¶¶ 8, 41-44. In bypassing Congress, plaintiff alleges that the President violated his right to hold his congressional representatives accountable for trade policy. *Id.* ¶¶ 65-66. Plaintiff thus seeks declaratory and injunctive relief that would block the Government from imposing or collecting

the additional tariffs announced by the President on products from Canada, Mexico, and China. *Id.* ¶¶ 81-86.

## ARGUMENT

I. <u>Standard Of Review</u>

A plaintiff bears the burden to demonstrate that subject-matter jurisdiction exists. *Design Int'l Grp., Inc. v. United States*, 113 F. Supp. 3d 1342, 1344 (Ct. Int'l Trade 2015) (citations omitted). Whether subject-matter jurisdiction exists is a question of law for the Court. *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (citation omitted). Challenges to a plaintiff's Article III standing are treated as challenges to the Court's subject-matter jurisdiction. *See Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354 (Fed. Cir. 2018).

To determine whether the complaint sufficiently alleges Article III standing, the Court of Appeals for the Federal Circuit requires courts to apply the same pleading standard that is used to determine whether a complaint states a claim upon which relief can be granted under Rule 12(b)(6). *Id.* Thus, "'[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would plausibly establish standing if accepted as true." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

II. <u>Plaintiff Lacks Article III Standing To Bring This Suit</u>

Plaintiff's complaint should be dismissed because he has not sufficiently alleged standing to bring this suit under Article III of the United States Constitution. To show Article III standing, the plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiff alleges that he has the "same standing as that of a person to make a citizen's arrest when a person of authority isn't present, or fails or refuses to do their duty to uphold the laws and constitution of the states and the United States." Compl. ¶ 72. But plaintiff's analogy to a citizen's arrest does not aid his case because the three Article III standing requirements—injury in fact, traceability, and redressability—comprise an "irreducible constitutional minimum." *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560-61). As demonstrated below, the complaint does not meet any of these minimum requirements.

### A. Plaintiff Has Not Alleged An Injury In Fact

To establish injury in fact, a plaintiff must show that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* For an injury to be "concrete," the injury must be "real, not abstract[.]" *Id.* Given these requirements, standing is "not satisfied by the abstract injury in nonobservance of the Constitution asserted by citizens" because it is neither personal to the plaintiff (particularized) nor sufficiently direct (concrete). *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 482 (1982) (quotation and alterations omitted). For this reason, the Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Id.* at 482-83 (quotation omitted).

Moreover, it is not enough to allege that the challenged conduct may result in someone else suffering a monetary loss. *See Finkelman v. NFL*, 810 F.3d 187, 195 (3d Cir. 2016) (because plaintiff did not buy a Super Bowl ticket, he "suffered no out-of-pocket loss" and, thus, "no injury-in-fact" sufficient to challenge ticket prices). For example, in a case challenging an allegedly discriminatory tariff classification, the Federal Circuit recognized that the "[i]mporters suffer an injury in fact as they are legally required to pay the allegedly discriminatory tariff," but "purchasers have no remedy to challenge [a] tariff classification." *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010).

Here, the complaint contains no allegation that plaintiff personally paid additional tariffs (or any tariffs) on entries of Mexican, Canadian, or Chinese products after the implementation of such tariffs. *See id.* Rather, plaintiff alleges that in imposing additional tariffs, the President has placed an "indirect" or "hidden" income tax on all American consumers by causing "increases in the cost of product prices paid by [those] consumers." Compl. ¶ 63. Plaintiff further alleges that the additional tariffs "will adversely affect the household income of [plaintiff] and all United States citizens," *id.*, and affect "all citizens' quality of life[.]" *Id.* ¶ 74. In addition, plaintiff alleges a violation of his constitutional right to hold his congressional representatives accountable for trade policy. *Id.* ¶¶ 65-66. None of these allegations reflects a particularized and concrete injury sufficient to satisfy Article III standing.

First, plaintiff's allegations of harm are not particularized because they do not "affect[] the plaintiff in a personal and individual way." *See Spokeo*, 578 U.S. at 339. Plaintiff's allegations about harm to the economy and consumer buying power are insufficient to demonstrate standing because they do not affect plaintiff in a personal way that is different from any other American consumer. Indeed, if allegations about harm to the national economy or

consumer buying power were sufficient to show a cognizable injury in fact, everyone would have standing to challenge any government action that could affect the economy or consumer buying power. *See, e.g.*, *Burnett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (rejecting a theory under which "everyone would have standing to litigate about everything"). Moreover, plaintiff's allegations about constitutional violations do not meet the particularity requirement because "the impact on [plaintiff] is plainly undifferentiated and 'common to all members of the public.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992) (quoting *United States v. Richardson*, 418 U.S. 166, 171, 176-77 (1974)). As the Supreme Court recognized in *Lujan*, remedying this type of abstract, generally-applicable harm, "including the public interest in Government observance of the Constitution and laws[,] is the function of Congress and the Chief Executive." *Id.* at 576.

Second, the complaint does not plausibly allege a concrete injury because the alleged harms are abstract and conjectural. *See Spokeo, Inc.*, 578 U.S. at 340. Plaintiff's generalized and speculative grievances about how trade policy may affect the American economy and decrease consumer buying power are not enough to plausibly show a concrete injury. Similarly, plaintiff's allegations regarding violations of his constitutional right to representatives who are accountable are insufficient because they reflect an abstract injury to the public, rather than an identifiable harm specific to him.

Because the complaint does not allege a particularized and concrete injury in fact, plaintiff cannot plausibly allege Article III standing to bring this suit.

B. <u>Plaintiff's Alleged Injury Is Not Fairly Traceable To The Additional Tariffs</u>

"The causation or 'traceability' element of standing looks to 'whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff.'" *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (emphasis added). The requirement of traceability is not satisfied where the chain of causation "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[.]" *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (Kennedy, J. concurring)). Thus, for "standing purposes, the mere existence of such [third-party] discretion, no matter how it is exercised in a particular situation, breaks the requisite chain of causation between the imposition of the tax and any economic harm in the form of higher costs suffered by the purchaser thereof." *Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674, 681-82 (2002).

Here, plaintiff's alleged injury "relies on a highly attenuated chain of possibilities," and therefore his injury is not fairly traceable to the challenged action. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410-11 (2013). For instance, plaintiff alleges that the additional tariffs will have an adverse effect on the national economy and American consumer buying power because prices may generally increase. Compl. ¶¶ 25-26. But prices are set by independent private actors and informed by multiple, complex market forces. Just because importers pay an additional tariff, the Court cannot reasonably infer that importers will uniformly pass these costs onto consumers—let alone onto plaintiff. *See Emerald Int'l Corp.*, 54 Fed. Cl. at 679-81.

In addition, plaintiff's allegation that, by imposing tariffs through executive orders, the President interfered with plaintiff's right to hold his representatives accountable is not fairly

traceable to the alleged injury because the President's actions concern trade policy—not voting rights – and do not deprive the plaintiff of his ability to vote for his representative of choice. Accordingly, plaintiff has not plausibly shown that the alleged harm to the national economy, consumer buying power, or his ability to hold representatives accountable for trade policy is fairly traceable to the additional tariffs.

      C.      <u>The Alleged Injuries Are Not Redressable By A Favorable Court Decision</u>

Under the redressability requirement for Article III standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation omitted). As with traceability, the Supreme Court has recognized a "bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Thus, the Court has "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)).

Here, just as the complaint does not show an injury in fact that is traceable to the new tariffs, it likewise does not show that any such injury would be redressable by a favorable Court decision. Even if the Court were to enjoin all additional tariffs, the complaint contains insufficient facts from which the Court could reasonably infer what would happen to business prices or the economy more generally in the absence of the tariffs. Similarly, blocking the tariffs would not provide any greater assurance of how plaintiff's representatives would act or that they would somehow be more accountable to plaintiff.

In sum, because the complaint does not sufficiently allege any element of Article III standing, this suit should be dismissed.

III.    Prudential Standing Principles Support Dismissal

In addition to demonstrating Article III standing, a plaintiff must also establish prudential standing to bring a suit.  *Bennett v. Spear*, 520 U.S. 154, 163 (1997).  "One aspect of prudential standing is third-party standing . . . This principle 'limits access to the federal courts to those litigants best suited to assert a particular claim.'"  *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313, 1332 (2021) (quoting *PrimeSource Bldg. Prods. v. United States*, 494 F. Supp. 3d 1307, 1330-31 (2021)) (Baker, J., concurring).  Thus, even if a plaintiff demonstrates Article III standing, "a court may nonetheless deny standing if the litigant seeks to vindicate not its own legal right or interest, but instead the 'legal rights or interests of [a] third part[y].'"  *Id.* at 1332-33.  To show third-party standing to vindicate the rights of another, the plaintiff must "demonstrate a close relationship with the person who possesses the right . . . and a hindrance [to the third party's] ability to protect its own interests."  *Id.*

Here, plaintiff does not have prudential standing because he is effectively seeking to vindicate the rights of importers and others from whom the additional tariffs are collected, rather than his own rights.  Plaintiff has not alleged facts demonstrating a "close relationship" with an individual or entity responsible for paying the additional tariffs, such as an importer, and he provides no reason why such an individual or entity is unable to seek relief in this Court for alleged violations of its own rights.  *Cf. Totes-Isotoner Corp.*, 594 F.3d at 1352 (importers have standing to challenge tariff because importers are "legally required to pay the allegedly discriminatory tariff" and the "purchasers have no remedy to challenge the tariff classification").  Thus, even if the Court determines that plaintiff sufficiently alleges Article III standing, the

Court should dismiss the complaint for lack of prudential standing given that others are better suited to litigate the validity of the additional tariffs.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director


s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge


s/ Eric E. Laufgraben
ERIC E. LAUFGRABEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-7995
Fax:         (202) 514-8624
Email:      Eric.E.Laufgraben@usdoj.gov

March 21, 2025                              Attorneys for Defendant

CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 3,534 words.

s/ Eric E. Laufgraben

March 21, 2025

CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Rules of this Court and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I hereby certify that on the 21st day of March, 2025, I have caused service of Defendant's Motion to Dismiss by email to gabarnes@twc.com and by first-class mail addressed as follows:

>   Gary L. Barnes
>   215 Reimer Street
>   Green Bay, WI 54302-3424

s/ Eric E. Laufgraben

March 21, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GARY L. BARNES,<br><br>     Plaintiff,<br><br>     v.<br><br>THE UNITED STATES,<br><br>     Defendant. | Court No. 25-0043 |

<u>ORDER</u>

On consideration of defendant's motion to dismiss, plaintiff's response, and all other papers, it is hereby:

ORDERED that the motion is granted;

ORDERED that the complaint is dismissed without prejudice.

IT IS SO ORDERED.

Dated: _____                                   _____